**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

ALAN CATALANI, TRUSTEE OF
THE B. CATALANI, INC. EMPLOY-
EES' PROFIT SHARING PLAN; STE-
VEN CATALANI, TRUSTEE OF THE
B. CATALANI, INC. EMPLOYEES'            Case No. 5:25-CV-01585-JKP
PROFIT SHARING PLAN; ROBBIE
PFEIFER, TRUSTEE OF THE B.
CATALINI, INC. EMPLOYEES'
PROFIT SHARING PLAN; AND  B.
CATALANI, INC., PLAN ADMINIS-
TRATOR;

     *Plaintiffs*,

v.

ANNA M. CATALANI, ALLISON
MICHELLE CATALANI, AMANDA
LEIGH CATALANI,

     *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Enter Final Judgment, (*ECF No. 10*), and

Plaintiffs' Opposed Motion for Attorney's Fees, (*ECF No. 12*). On February 24, 2026, the Court

held a hearing on the Motions. Min. Ent. Feb. 24, 2026. Upon consideration of the arguments,

filings, and applicable law, the Court grants Defendants' Motion to Enter Final Judgment, (*ECF

No. 10*), and denies Plaintiffs' Opposed Motion for Attorney's Fees, (*ECF No. 12*).

## FACTUAL BACKGROUND

This interpleader action arises from the distribution of an Employees' Profit Sharing Plan

("the Plan"). *See ECF No. 1*. Since 1981, Plaintiff B. Catalani Inc. maintained the Plan for its

employees. *Id.* at 3. After the implementation of the Retirement Equity Act of 1984, B. Catalani modified the Plan in 1984 to apply the Qualified Joint Survivor Annuity ("QJSA") rules. *Id.* at 3.

The QJSA rules provide that fifty percent (50%) of a married participant's account balance be used to fund a death benefit for the surviving spouse unless waived prior to a married participant's death ("Spousal Death Benefit"). *Id.* at 3. The QJSA rules allow for a married participant to designate amounts not specified for the Spousal Death Benefit (*i.e.*, the remaining 50%) without the consent of the participant's spouse. *Id.* at 3.

Effective October 1, 1984, until 2006, the Plan operated consistently with its terms with respect to the QJSA rules. *Id.* at 3. However, during a "2006 amendment and restatement of the Plan, a box was inadvertently not selected to apply the QJSA rules under the terms of the Plan." *Id.* at 3. B. Catalani discovered this fact in 2025. *Id.* at 3.

Dan Catalani is a participant in the Plan. *Id.* at 4. He died in October 2024, leaving his wife, Anna Catalani, (Defendant 1) and two daughters, Allison Catalani, (Defendant 2) and Amanda Catalani, (Defendant 3). *Id.* at 4.

Shortly before his death, Dan executed and delivered to the Plan Administrator, Plaintiff B. Catalani,[1] a Beneficiary Designation Form, naming his two daughters as beneficiaries—each receiving fifty percent (50%) of the remaining amount in his Profit Sharing Account. *Id.* at 4.

Plaintiffs concern, however, is whether the QJSA rules apply, since "a box was inadvertently not selected to apply the QJSA rules under the terms of the Plan." *Id.* at 3. If the QJSA rules apply, Plaintiffs allege Dan Catalani's wife, Anna Catalani, is automatically entitled to the Spousal Death Benefit—fifty percent (50%) of the vested account balance. *Id.* at 4. In this scenario, the amount available to Dan Catalani's two daughters, Amanda Catalani and Allison

---

[1] Plaintiffs identify that B. Catalani Inc. "is the Plan Administrator and sponsor . . ." *ECF No. 1 at 2.*

Catalani, to share is the remaining fifty-percent (50%) of the vested account balance, or twenty-five percent (25%) each. *Id.* at 4.

## PROCEDURAL HISTORY

On November 26, 2025, "faced with these conflicting claims," Plaintiffs filed this interpleader action requesting the following relief:

1) The Court accept the unconditional tender into the registry of the Court the amount in Dan Catalani's Profit Sharing Plan account;

2) The Court deposit these funds in an interest bearing account;

3) Determine the proper allocation of Dan Catalani's Profit Sharing Plan account among the claimants;

4) Award the Trustees and the Plan Administrator their reasonable and necessary attorneys' fees and costs of court associated with this matter;

5) Enter an Order of Discharge of the Trustees and Plan Administrator; and

6) For such other relief, whether at law or in equity to which the Court deems they are justly entitled.

*Id.* at 5–6. Subsequently, on December 5, 2025, U.S. Magistrate Judge Elizabeth S. Chestney granted Plaintiffs' Motion for Interpleader Deposit, (*ECF No. 2*), which Plaintiffs filed alongside their Complaint, (*ECF No. 1*).

On December 15, 2025, the parties filed the instant Motions—Defendants' Motion to Enter Final Judgment, (*ECF No. 10*), and Plaintiffs' Opposed Motion for Attorney's Fees, (*ECF No. 12*).

In Defendants' Motion to Enter Final Judgment, Defendants' counsel states:

After recently being retained by Dan's widow Anna, undersigned counsel participated in an initial conference with counsel for the Plan, and it became apparent that there was some uncertainty and confusion among the Plan's lawyers regarding which family members were entitled to benefits under the Plan. This uncertainty and confusion is generally described in Plaintiffs' Declaratory Judgment Action and Interpleader [*ECF No. 1*]. It was discussed during the initial

conference that the Plan's lawyers would provide documentation to Defense counsel and Defense counsel would then confer with Anna's daughters to determine if there was any agreement within the family on how the Plan distribution should be made to avoid the cost and expense of filing any lawsuit.

Before Defense counsel received any documentation from the Plan's counsel, and prior to confirming whether an agreement existed within the family, Plaintiffs filed this lawsuit without further conferring or following up on the initial conference. Surprised by the filing, Defense counsel contacted Plaintiffs' counsel to understand why the lawsuit was necessary, again attempting to avoid Dan's widow and daughters having to incur the costs of litigation. It was explained by Plaintiffs' counsel that the Plan's lawyers recommended this course of action to try and create a layer of protection around the trustees so that they could not get sued for the manner in which the Plan distributed the funds.

After visiting with Anna's daughters to discuss the Plan's lawsuit, it became abundantly clear that the family had no conflict with the manner in which the funds would be distributed. Defendants are in full agreement that the $3 million interpleaded into the registry of the Court (including any additional funds that may be due and owing beyond this amount) should be distributed as follows: 50% to Anna, 25% to Allison, and 25% to Amanda.

*ECF No. 10* at 2. Responding to Defendants' Motion to Enter Final Judgment, Plaintiffs filed an Advisory indicating their intention to move for attorney's fees. *ECF No. 11*.

In Plaintiffs' Opposed Motion for Attorney's Fees, Plaintiffs "request that the Court award them their attorney['s] fees in the amount of $88,746.25." *ECF No. 12* at 3. In their view, they are "entitled to more than the fees it incurred in drafting the Interpleader and Declaratory Action; [they are] entitled to all of the fees [they] have incurred in trying to resolve this conflict and such an award is within the discretion of the Court " *ECF No. 16* at 2. Defendants generally aver they should not be held responsible for Plaintiffs' "clerical error." *ECF No. 14* at 1–2.

Due in part to the size of the sum requested for work on an interpleader action, the Court ordered Plaintiffs to submit an advisory addressing the Courts concerns. *ECF No. 20*. Thereafter, Plaintiffs submitted their Advisory, (*ECF No. 23*), and, on February 24, 2026, the Court held a hearing on the Motions. Min. Ent. Feb. 24, 2026.

## LEGAL STANDARDS

"It is well settled that a district court has the authority to award costs, including reasonable attorney's fees, in interpleader actions." *Royal Ind. Co. v. Bates*, 307 F. App'x 801, 806 (5th Cir. 2009) (unpublished). Fees may be awarded when the interpleader is a disinterested stakeholder and is not in substantial controversy with one of the claimants. *Phillips Petroleum Company v. Hazlewood,* 534 F.2d 61, 63 (5th Cir.1976). Fees are generally awarded against the interpleader fund, but may, in the discretion of the court, be taxed against one of the parties when their conduct justifies it. *Dearborn Life Ins. Co. v. Curtis*, No. 1:20-CV-00316-RP, 2021 WL 1432697, at *3 (W.D. Tex. Feb. 2, 2021) (internal citations omitted).

Awarding fees is a matter of judicial discretion, *see id*., and the following factors are relevant to determining whether to award fees to an interpleader-plaintiff:

(1)   whether the case is simple;

(2)   whether the interpleader-plaintiff performed any unique services for the claimants or the court;

(3)   whether the interpleader-plaintiff acted in good faith and with diligence;

(4)   whether the services rendered benefitted the interpleader-plaintiff; and

(5)   whether the claimants improperly protracted the proceedings.

*Bates*, 307 F. App'x at 806. Nevertheless, the Fifth Circuit holds a distict court abuses its judicial discretion in awarding attorney's fees when the interpleader-plaintiff is "responsible for much of the uncertainty." *Id*.

## ANALYSIS

Because neither of the parties addressed the following cases at length in their briefings or at the hearing, the Court briefly summarizes relevant Fifth Circuit case law in this context.

In *Royal Indem. Co. v. Bates*, the Fifth Circuit found a district court abused its discretion in granting costs and attorney's fees to the interpleader plaintiffs. 307 Fed. Appx. 801 (5th Cir. 2009) (unpublished). In this case, after an annuity payee ("Koonce") instructed the interpleader plaintiff to designate an individual ("Bates") as his survivor-beneficiary, the interpleader plaintiff failed to do so. *Id.* at 803–804. When Koonce died intestate, a dispute ensured between Bates and his heirs. *Id.* "Uncertain whether Koonce's purported designation was effective, [interpleader plaintiff] suspended payment of the annuity and initiated th[e] interpleader action to determine who . . . is entitled to the $186,000." *Id.* In reversing the district court's award of interpleader-plaintiffs' costs and attorney's fees, the Fifth Circuit found "[b]ecause [interpleader-plaintiffs'] actions . . . are in part responsible for causing this litigation [] and . . . are in part responsible for protracting this litigation, rewarding their endeavors with costs and attorney's fees was an abuse of discretion." *Id.* at 806.

In *John Hancock Life Ins. Co. (U.S.A.) v. Est. of Wheatley*, the Fifth Circuit again found a district court abused its discretion in granting costs and attorney's fees to the interpleader plaintiff. No. 21-20508, 2022 WL 4103259 (5th Cir. Sept. 7, 2022) (unpublished). In this case, after an annuity payee ("Wheatley") died, the interpleader plaintiff failed to pay her estate and instead sent the monthly payments to Wheatley's ex-husband. *Id.* at *1. After several months and multiple letters from Wheatley's Estate asserting its status as the annuity's sole beneficiary, the interpleader plaintiff ceased all payments and filed an interpleader action to determine the proper beneficiary. *Id.* at *1. In reversing the district court's award of the interpleader-plaintiff's costs and attorney's fees, the Fifth Circuit found that "[w]hile the district court credited [the interpleader-plaintiff] for its 'efforts to encourage settlement with the Defendants,' this ignores the fact that [the interpleader-plaintiff] initiated litigation that, at its base, simply required the untan-

6

gling of [the interpleader-plaintiff's] own errors." *Id.* at *5. For this reason, the Fifth Circuit held "[r]ewarding [the interpleader-plaintiff] for resolving a self-created problem that resulted in years of litigation would undermine the validity of necessary and appropriate interpleader actions. [Thus, the] district court abused its discretion in awarding attorney['s] fees to [the interpleader-plaintiff]." *Id.* at *5. The Court notes, in this case, the district court limited the costs and attorney's fees in part to the hours spent preparing and filing the interpleader action.[2]

Although unpublished, the Court finds these Fifth Circuit cases persuasive and, for the reasons listed below, the Court declines to award Plaintiffs its fees and costs. The Court acknowledges its oral pronouncement of an award of costs and attorney's fees to Plaintiffs in the amount of $10,000.00 at the February 24, 2026, hearing. Min. Ent. Feb. 24, 2026. However, at the hearing neither of the parties brought these cases to the Court's attention, and upon further review the Court has reconsidered its pronouncement.

As Plaintiffs explicitly state in their briefings, they are seeking "more than the fees it incurred in drafting the Interpleader and Declaratory Action; [they are] entitled to all of the fees [they] have incurred in trying to resolve this conflict."[3] *ECF No. 16* at 2. Indeed, upon review of Plaintiffs' affidavits, of the "$107,000.00" in costs and attorney's fees requested at the hearing, the affidavits indicate only $34,805.00 in costs and attorney's fees relate to filing and preparing the interpleader action. Hearing Transcript at 2:14–18; *see also* Plaintiffs' Exhibits 1, 2, 3. By the

---

[2] *See John Hancock Life Ins. Co. v. Est. of Wheatley*, No. 4:18-CV-02869, 2020 WL 5646148, at *7 (S.D. Tex. Sept. 22, 2020), *rev'd and remanded sub nom. John Hancock Life Ins. Co. (U.S.A.) v. Est. of Wheatley*, No. 21-20508, 2022 WL 4103259 (5th Cir. Sept. 7, 2022).

[3] Courts have found that an award is not necessary where the expenses incurred are those which occur in the normal course of business, and that specifically an insurer may not transfer a part of their ordinary cost of doing business to their insureds by initiating and being compensated for bringing an action for interpleader. *Certain Underwriters at Lloyd's London Subscribing to Certificate No. WHP000080728005 v. Moran*, No. 5:10-CV-00529, 2011 WL 3235469, at *1 (W.D. Tex. July 27, 2011) (internal citations omitted). The consistent rationale for awarding costs and fees is that competing claimants benefit when the stakeholder expeditiously files an interpleader action and deposits the fund into the court, and that typically the costs and attorneys fees are nominal. *Id.*; *see also Rhoades v. Casey*, 196 F.3d 592 (5th Cir. 1999) (stating "the award of $23,951 is a large sum in attorney's fees for an interpleader action").

Court's calculation, then, Plaintiffs seek in excess of $72,000.00 for costs and attorney's fees associated with resolving the underlying clerical issue associated with B. Catalani's Employees' Profit Sharing Plan. *See* Plaintiffs' Exhibits 1, 2, 3. For example, the affidavits include billing records for "tax/ERISA compliance," among other activities not specifically related to the interpleader action. *Id.*

At the hearing, Plaintiffs' counsel acknowledged B. Catalani is partially to blame for the clerical error. Hearing Transcript at 39:14–24. Explaining B. Catalani's predicament, Plaintiffs' counsel stated:

> There is in the amendment to this plan, and maybe even under ERISA, a box that you can check that takes you out of that standard beneficial designation. That's the box that didn't get checked, and it didn't get realized by the plan's sponsor, meaning the company that payed for the creation of the plan B. Catalani. And it didn't get recognized by their plan adviser, who -- who was a qualified adviser who held himself out as being knowledgeable and experienced for a long time, 2006 forward. He missed the box.

*Id.* at 7:8–16. Later, in response to a question from the Court, Plaintiffs' counsel stated the conflict regarding the beneficiary designation was only a result of the company and the plan advisor's mistake "in not checking the box, right . . . only because of that." *Id.* at 9:3–9. It is due to this that, in efforts to understand the implications of this clerical error, Plaintiffs' counsel enlisted outside counsel to assist Plaintiffs' counsel in understanding the extent of the Plaintiff trustees' (and the Plan's) exposure to liability by claimants. *Id.* at 9:10–11:13.

Accordingly, like the Fifth Circuits cases cited above, the Court finds Plaintiffs initiated litigation that, at its base, simply required the untangling of Plaintiffs' own errors. Because Plaintiffs' actions "are in part responsible for causing this litigation," rewarding their endeavors with costs and attorney's fees is inappropriate here. *Bates*, 307 Fed. Appx. at 806.[4]

---

[4] *See Viking Ins. Co. of Wisconsin v. Sakhrani*, No. 2:19-CV-00108-KS-MTP, 2020 WL 4006331, at *1 n.1 (S.D. Miss. July 15, 2020).

Further, at the hearing, Plaintiffs' counsel did not demonstrate to the Court's satisfaction that it is a disinterested stakeholder. Explaining B. Catalani's interest, Plaintiffs' counsel stated:

> We're interested in a right result to make sure that there's no exposure to the—not only the trustees, but if the IRS comes in and terminates the plan because from 2006 forward it's been misapplied, it's going to hurt all the beneficiaires.

Hearing Transcript at 14:21–18:23. Plaintiffs' counsel admitted Plaintiffs will be "protect[ed] because we have a court order telling—telling the [P]lan how to distribute the money that belonged to Dan Catalani." *Id.* at 19:10–25. Finally, Plaintiffs' counsel added:

> [W]e are not wholly disinterested in the outcome. We are wholly disinterested in this suit. We have pled solely to put money in the court so the Court can determine through somebody else's efforts who gets the money. That was--that's it. That interest ended, as you have said correctly. We agree that we were discharged. And once -- once we put the money in the court, we don't -- nobody sued us back. There's no counterclaim against B. Catalani. So we don't have an interest in the outcome of the suit. We have an interest in the money being paid to the proper party, and we -- and not stepping into a Department of Labor audit and an IRS audit without having an explanation for how the money got distributed. That's the sole interest.

*Id.* at 22:9–23. In light of the analysis immediately preceding this section of the opinion, the Court does not find it necessary to determine the degree to which Plaintiffs are disinterested stakeholders. Still, the Court notes for any reviewing court, that Plaintiffs' counsel's statement "we don't have an interest in the outcome of this suit," appears inaccurate considering Plaintiffs' Complaint seeks for the Court to "[d]etermine the proper allocation of Dan Catalani's Profit Sharing Plan account among the claimants" and "[e]nter an Order of Discharge of the Trustees and Plan Administrator." *Id.*; *see also ECF No. 1* at 6.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Enter Final Judgment, (*ECF No. 10*), and **DENIES** Plaintiffs' Opposed Motion for Attorney's Fees, (*ECF No. 12*). The Court will separately issue final judgment.

It is so ORDERED.
SIGNED this 25th day of February, 2026.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE